IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 7 |
| | : |
| LEN POLICHUK | : |
| | : |
| DEBTOR | : BKY. NO. 08-10783ELF |
| | : |

**OBJECTION OF CREDITOR MARINA AYZENBERG
TO CLAIM NO. 15 FILED BY NICHOLAS J. REINHART**

Marina Ayzenberg ("Ayzenberg"), by and through her counsel, Fox Rothschild LLP, hereby objects to Proof of Claim # 15 of Nicholas J. Reinhart ("Reinhart") and in support thereof states as follows:

1. Proof of Claim No. 15 was filed by Nicholas J. Reinhart on or about June 9, 2009.

2. The objecting party is Marina Ayzenberg, a creditor and spouse of the Debtor, and a party in interest within the meaning of 11 U.S.C. § 502(a).

**STANDING TO OBJECT**

3. Ayzenberg has standing to object to Reinhart's claim by virtue of her status as a creditor and by virtue of the fact that the Chapter 7 Trustee is unwilling and/or unable to object to Reinhart's claim. Ayzenberg is now the holder of Claim # 11 and alleges other equitable and legal claims against the Debtor.

4. The court in In re: McKeesport Steel Casting Company held that "the rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach." 799 F. 2d 91, 94 (3d Cir. 1986).

5. Sufficient reason exists where a Trustee is unwilling or unable to bring an objection at a party in interest's request. Collier on Bankruptcy-15th Edition Rev. § 502.02(a)(2)(d) citing: In re: Simon, 179 B.R. 1, 9-10 (Bankr. D. Mass. 1995).

1

6. Although the Trustee generally acts as the spokesman for creditors, creditors have been permitted to file objections to claim where the Trustee refuses to act or where the interests of the creditors diverge from the interests of the Trustee. See, e.g. In re: Thompson, 965 F. 2d 1136 (1st Cir. 1992) (creditors have an "indirect right" to object to claims);

7. The Trustee's interests do not correspond with Ayzenberg's for reasons made known in prior filings with this Honorable Court.

8. Furthermore, the Trustee may lack a sufficient interest in objecting to Reinhart's claim because as of this date no assets exist within the Estate.

9. Consequently, the Trustee and/or her counsel may lack sufficient resources and/or interest to mount an effective objection to what is an extremely complicated (but ultimately meritless) claim.

10. In addition, Ayzenberg has standing to object to Reinhart's claim by virtue of her status as Debtor's spouse and her inchoate interest in the Estate which arises by operation of law pursuant to the Pennsylvania Divorce Code. See, In re Sommerville Wickham, Jr., 130 B.R. 35 (Bankr. E.D. Va. 1991) (non-debtor spouse is a party in interest with standing to object to claims); In re: Morton, 298 B.R. 301 (Bankr. 6th Cir. 2003) (same).

**BRIEF FACTUAL BACKGROUND**

11. On or about June 9, 2009 Reinhart filed a Proof of Claim in the amount of $1,600,000 (the "Reinhart Claim"). [Claim # 15-1].

12. The Reinhart Claim arises from his purchase of stock in Dunphy Nissan, Inc. ("Dunphy Nissan") and SNL Trading, Inc. ("SNL").

13. Dunphy Nissan operated a Nissan dealership in Pennsylvania. SNL owned the real estate upon which the dealership operated.

14. Reinhart purchased Dunphy and SNL in or around November 10, 2003.

15. However, Reinhart operated and/or managed Dunphy and SNL for a period of approximately one (1) year prior to the closing date.

16. Many of the "obligations" or "liabilities" for which Reinhart seeks indemnity were, in fact, incurred under this management, supervision and control.

## OBJECTIONS TO CLAIM 15

17. Ayzenberg objects to Reinhart's claim for a number of reasons.

18. First, Reinhart's claim is untimely.

19. Second, Ayzenberg believes and therefore avers that Reinhart lacks standing to assert the claim because he assigned all rights, title and interests in the Reinhart Claim to, inter alia, one Andrew Mogilyansky ("Mogilyansky"), a creditor and holder of Claim # 14.

20. Third, to the extent that the Reinhart Claim was not assigned, the Reinhart Claim was released as against the Debtor through the execution of one or more release documents as between Reinhart, and his former business partners Mogilyansky and Sergey Naumovsky a/k/a Serge Naumovsky ("Naumovsky").

21. Fourth, to the extent not assigned or released, the Reinhart Claim springs from certain Stock Purchase Agreements made on or about November 10, 2003 and November 11, 2003 pursuant to which Reinhart purchased Debtor's interest in Dunphy Nissan, Inc. and SNL Trading, Inc. Each of the Stock Purchase Agreements contains a binding agreement to arbitrate and, consequently, Reinhart must be compelled to arbitrate his claim. See, *Mintze v. American General Fin. Servcs. Inc.*, 434 F.3d 222 (3d Cir. 2006). In this regard, a draft demand for arbitration as an "addendum" to his proof of claim. However, the demand for arbitration is unsigned and, to the best of Ayzenberg's knowledge, no arbitration has ever been demanded or

3

commenced before the American Arbitration Association or any other dispute resolution tribunal.

22. <u>Fifth</u>, Count I of the draft, un-filed and unsigned demand for arbitration fails to state a claim upon which relief may be granted. Count I is a claim for $37,000 representing "unpaid real estate taxes for 2003 for the properties at 510-538 West Chester Pike and 3400 Blackhorse Pike." Debtor has no liability for unpaid real estate taxes under the terms of the Stock Purchase Agreements. Furthermore, Reinhart did not <u>personally</u> pay said real estate taxes and thus cannot seek indemnity in his individual capacity. Consequently, Count I fails to state a claim upon which relief may be granted.

23. <u>Sixth</u>, Count II of the draft, un-filed and unsigned demand for arbitration fails to state a claim upon which relief may be granted.

24. <u>Sixth</u>, Count II purports to state an indemnity claim for $50,000 based on certain litigation purportedly commenced by CBS in 2004 in the Court of Common Pleas of Philadelphia County. According to Reinhart's claim, the CBS claim arises out of Debtor's "operation and management of SNL Trading." [Docket # 15-1 Part 2, page 6]. Ayzenberg believes and therefore avers that Count II refers to the matter of <u>CBS v. Dynamic Funding, Inc.</u>, et al., filed on October 14, 2004 under Docket Number 0410-1767. The indemnity provisions, if any, in the SNL Stock Purchase Agreement provide that SNL Trading, Inc. and Shareholders shall indemnity and hold *Buyer* harmless from any and all claims." (emphasis added). The term "Buyer" is a defined term and refers to Reinhart. Reinhart was not a party to the litigation referenced in Count II and was not subjected to any claim, suit or demand stemming from the operation of SNL Trading, Inc. Consequently, Count II fails to state a claim upon which relief may be granted.

4

25. <u>Seventh</u>, Count III purports to state an indemnity claim for $50,000 based on certain litigation purportedly commenced by Wells Fargo Financial Leasing, Inc. in the Iowa District Court for Polk County. According to Reinhart, the claim stems from a May 31, 2002 equipment lease entered into by Dunphy Nissan. Reinhart purchased the stock of Dunphy Nissan with all rights and liabilities attendant thereto. Furthermore, the indemnity provisions in the Dunphy Stock Purchase Agreement run in favor of Reinhart individually and contemplate a relatively limited category of liabilities, i.e. any claims asserted against Reinhart <u>personally</u> based on the operation of Dunphy Nissan prior to the closing date. Reinhart was not a party to the litigation referenced in Count III and was not subjected to any claim, suit or demand stemming from the operation of Dunphy Nissan. Consequently, Count III fails to state a claim upon which relief may be granted.

26. <u>Eighth</u>, Count IV purports to state an indemnity claim for $50,000 based on certain litigation purportedly commenced by Federated Insurance in the Court of Common Pleas of Delaware County on or about June 29, 2005. According to Reinhart, the claim stems from Debtor's "ownership and management of SNL Trading." Reinhart purchased the stock of SNL Trading with all rights and liabilities attendant thereto. Furthermore, the indemnity provisions in the SNL Stock Purchase Agreement run in favor of Reinhart individually and contemplate a relatively limited category of liabilities, i.e. any claims asserted against Reinhart <u>personally</u> based on the operation of SNL Trading prior to the closing date. Ayzenberg asserts that Reinhart was not a party to the litigation referenced in Count IV and was not subjected to any claim, suit or demand stemming from the operation of SNL Trading. Consequently, Count IV fails to state a claim upon which relief may be granted.

LN1 1008904v4 09/11/09
LN1 1060272v1 02/12/10

27. <u>Ninth</u>, Counts V and VI of the draft and un-filed demand for arbitration purport to assert "indemnity" claims totaling $1,404,857.90. These claims represent debits and obligations of Dunphy Nissan and SNL Trading which were incurred prior to the closing date but paid some time later. Reinhart purchased the stock of SNL Trading and Dunphy Nissan subject to liabilities attendant thereto. The indemnity provisions in the SNL Stock Purchase Agreement run in favor of Reinhart individually and contemplate a relatively limited category of liabilities, i.e. any claims asserted against Reinhart <u>personally</u> based on the operation of SNL Trading prior to the closing date. The debts referenced in Counts V and VI are not "claims" of "liabilities" within the meaning of the indemnity provision. Furthermore, the debts and obligations referenced in Counts V and VI have never been asserted against Reinhart personally and, consequently, he has not been subjected to any claim, suit or demand stemming from the operation of SNL Trading or Dunphy Nissan. Consequently, Count V and VI fail to state a claim upon which relief may be granted.

28. <u>Tenth</u>, Count VII purports to state a claim for unjust enrichment in the amount of $1,591,859.90 based on the same allegations set forth in Counts I through VI. Count VII fails to state a claim upon which relief may be granted for the reasons previously expressed. Furthermore, Reinhart's equitable claim is barred by <u>inter alia</u>, the existence of an adequate legal remedy and a host of equitable doctrines including, without limitation, laches and unclean hands.

29. <u>Eleventh</u>, to the extent that the claims in Counts I through VII accrued prior to January 31, 2004, any such claims are barred by the applicable statutes limitation.

LN1 1008904v4 09/11/09
LN1 1060272v1 02/12/10

**CONCLUSION**

30. For all of the foregoing reasons, Ayzenberg objects to Claim No. 15 and requests that Claim No. 15 be disallowed in its entirely and prays for such other relief as may be deemed just, equitable and/or appropriate under the circumstances.

Respectfully submitted,

FOX ROTHSCHILD LLP


By: /s/ Ely Goldin, Esquire
Ely Goldin, Esquire (Pa. Bar No. 75937)
10 Sentry Parkway, Suite 200
Post Office Box 3001
Blue Bell, PA 19422
(610) 397-6509  (tel)
(610) 397-0450 (fax)
egoldin@foxrothschild.com

Dated: February 16, 2010