ORIGINAL

UNITED STATES BANKRUPTCY COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BEFORE THE HONORABLE ERIC L. FRANK, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 08-10783-ELF-7 |
| | ) THE COURT'S RULING on |
| LEN POLICHUK, | ) the MOTION to DISMISS |
| | ) CLAIMS OBJECTIONS |
| Debtor. | ) |
| | ) Monday, April 26, 2010 |
| _____ ) | Philadelphia, Pennsylvania |

Appearances:

| | |
|---|---|
| For the Debtor<br>(via telephone): | Harry J. Giacometti, Esq.<br>Smith Giacometti, LLC<br>One Liberty Place, 1650 Market Place,<br>  36th Floor<br>Philadelphia, Pennsylvania  19103 |
| For Marina Ayzenberg: | Ely Goldin, Esq.<br>Fox Rothschild, LLP<br>1250 South Broad Street, Suite 1000<br>Lansdale, Pennsylvania  19446 |
| For Chapter 7 Trustee<br>Bonnie B. Finkel: | Gary David Bressler, Esq.<br>McElroy Deutsch Mulvaney & Carpenter<br>1617 John F. Kennedy Boulevard,<br>  Suite 1310<br>Philadelphia, Pennsylvania  19103-1815 |
| For Andrew Mogilyansky: | Robert Mark Bovarnick, Esq.<br>Law Offices of Robert M. Bovarnick<br>Two Penn Center Plaza<br>1500 John F. Kennedy Boulevard,<br>  Suite 1310<br>Philadelphia, Pennsylvania  19102 |
| Digital Court<br>Reporter: | United States Bankruptcy Court<br>Christopher Caruso<br>Robert N. C. Nix Sr. Federal Courthouse<br>900 Market Street, Suite 400<br>Philadelphia, Pennsylvania  19107<br>(215) 408-2849 |
| Certified Electronic<br>Transcriber: | Palmer Reporting Services |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    2

1    <u>Monday, April 26, 2010</u>                                        <u>10:42 o'clock a.m.</u>

2                              P R O C E E D I N G S

3              THE CLERK:  All rise.

4              THE COURT:  Good morning.

5              MR. BRESSLER:  Good morning, Your Honor.

6              MR. GOLDIN:  Good morning, Your Honor.

7              THE COURT:  I have some parties on the phone, I guess.

8              MR. GIACOMETTI:  Good morning, Your Honor.  Harry

9    Giacometti is on the phone, as well.

10             MR. GOLDIN:  Ely Goldin, Your Honor.

11             THE COURT:  All right.  We'll start with the Polichuk

12   case, which is number two on the list.

13             MR. BRESSLER:  Good morning, Your Honor.  Gary

14   Bressler for the trustee.

15             MR. BOVARNICK:  Robert Bovarnick on behalf of Andrew

16   Mogilyansky.

17             THE COURT:  When I scheduled this hearing to deliver

18   my decision on the motion to dismiss the claims objections filed

19   by Maria Ayzenberg, joined in by the debtor, and I'm now

20   prepared to issue that decision.

21             Maria Ayzenberg, a creditor in this case, has filed

22   objections to Claim Numbers 14 and 15.  These are claims held by

23   Andrew Mogilyansky, Number 14, and Nicholas Reinhart, Number 15.

24             Recently the Reinhart claim was amended to add

25   entities Dunphy Nissan, Incorporated and S&L Trading,

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    3

1   Incorporated as coclaimants.  The debtor has filed joinders to

2   Maria Ayzenberg's objections to these two claims.  Ayzenberg

3   filed her objection to Mogilyansky's claim in September 2009.

4           Mogilyansky then filed a motion to dismiss the

5   objection that same month primarily on the ground that only the

6   trustee is authorized to file objections to proofs of claim.

7   The trustee supports Mogilyansky's motion.

8           Hearings on the motion were continued numerous times

9   while the parties attempted to reach a global settlement through

10  mediation.  And after that failed, pending the outcome of the

11  debtor's motion to voluntarily dismiss the bankruptcy case, that

12  motion, the debtor's motion to dismiss, having been denied by

13  order dated March 1st, 2010.

14          Meanwhile, in February 2010 Ms. Ayzenberg filed an

15  objection to the claim of Nicholas Reinhart, the creditor who

16  had not been scheduled on the debtor's schedules.  Ayzenberg

17  also filed the — excuse me — the — that objection was joined by

18  the debtor, as I mentioned earlier.

19          While no formal motion to dismiss the objection to the

20  Reinhart claim has been filed, the parties agreed that the same

21  issues that applied to the Mogilyansky claim applied to the

22  Reinhart claim.

23          The hearing on Mogilyansky's motion to discuss the

24  claims objection was concluded last Monday, April 19th.  At the

25  hearing the parties agreed to incorporate into the record the

*The Court's Ruling on the Motion to Dismiss Claims Objections*                          4

1   testimony of the trustee from the hearing held previously on the

2   debtor's motion to voluntarily dismiss this case, concluded on

3   March 1st, 2010, as well as making part of the record an offer

4   proof of further testimony from the trustee.

5          In addition, the parties agree that I could take

6   judicial notice of items on the — on the claims docket.

7          Today I announce my decision.  The starting point in

8   determining whether a creditor may object to another creditor's

9   claim is the statute.  Section 502(a) states that a claim is

10  allowed unless a party-in-interest objects.  The term,

11  "party-in-interest" ordinarily includes a creditor.

12         Thus the plain language of the Bankruptcy Code

13  suggests that an unsecured creditor has the right to object to

14  the claim of another unsecured creditor.

15         However, historically there has been a judicial

16  limitation imposed on the plain language of the Code.  A rule

17  has developed that has been widely applied by almost all courts

18  that a general creditor has no right to contest another

19  creditor's claim unless the trustee has refused to do so and the

20  Court, based on the appropriate findings, has granted the

21  creditor permission to do so.

22         This principle was expressed in among many other

23  cases, *Fred Rueping Leather Company versus Fort Greene National*

24  *Bank*.  That's a case from 1939 reported at 102 F.2d 372.

25         There appear to be two related rationales for this

*The Court's Ruling on the Motion to Dismiss Claims Objections*          5

1   doctrine:

2        The first has to do with the role of the trustee in

3   the bankruptcy process.  And at least some courts have

4   analogized the bankruptcy estate to a trust, recognizing the

5   role of the bankruptcy trustee as the trust representative, with

6   sole authority to act on behalf of the trust, unless his or her

7   conduct is arbitrary or unreasonable.

8        The second rationale is one of administrative

9   convenience, that at the needs of an orderly and expeditious

10  administration of the bankruptcy case mandate that this rule be

11  apply.

12       Sometimes courts refer to the concept of avoiding the

13  chaos that would result if all creditors could file objections

14  to claims.  Some courts express limitation set forth in this

15  doctrine on the right of creditors to object to proofs of claim

16  as a lack of standing to file claims objections.  In my view,

17  this is not an accurate use of the term "standing."

18       To the extent that the statute on its face authorizes

19  objections by all parties in interest, the limitation that is

20  developed is not one of standing, but rather a judicial gloss on

21  the statute.

22       That said, I am convinced that this limitation is

23  deeply rooted in bankruptcy jurisprudence, going back at least

24  to the enactment of the Bankruptcy Act of 1898.  I refer the

25  parties to the extended discussion of this issue in the 14th

*The Court's Ruling on the Motion to Dismiss Claims Objections*          6

1  edition of *Colliers*, paragraph 57.17[2.2].

2      I am unaware of any textual or any other indication

3  that Congress intended to alter past practice in enacting the

4  Bankruptcy Code.   Therefore, as the Supreme Court has instructed

5  in *Cohen v. De La Cruz*, 523 U.S. 213, a 1998 case, as well as

6  other decisions:   In the absence of evidence in enacting the

7  Bankruptcy Code Congress intended to alter past practice here,

8  the limitation on the right of parties-in-interest to object to

9  proofs of claim without court authorization.   Past practice was

10 carried forward to the Bankruptcy Code.   And, in my view, *Fred*

11 *Rueping*, the 1939 Third Circuit case remains good law.

12     So the question here is whether in this case the Court

13 should authorize a creditor to object to a proof of claim at

14 this time over the trustee's objection?

15     The real issue is, given the trustee's presumptively

16 exclusive role in the claims objection process, what standard

17 should the Court employ in reviewing a trustee's judgment on

18 this question?

19     Surprisingly, there is only a modest amount of

20 discussion on that issue in the case law.   One of you expressed,

21 in this District in the case of *In re Morrison*, 69 B.R. 586, a

22 bankruptcy decision from 1987, is that the creditor must

23 establish that the trustee abused his or her discretion in not

24 objecting to a claim.   That is the trustee must have acted

25 unreasonably, or arbitrarily, or unjustifiably.

1   Other reported decisions might be read to require a

2   lesser showing.  That is, that the estate would benefit if the

3   objection to the proof of claim was sustained or, restating this

4   slightly, that creditors may prosecute objections to proofs of

5   claim if permitting them to do so is in the best interest of the

6   bankruptcy estate.

7   Two cases sometimes cited for this proposition are *In*

8   *re Trusted Net Media Holdings, LLC*, 334 Bankruptcy Reporter 470,

9   Bankruptcy Court, Northern District of Georgia 2005 and *In re*

10  *Sinclair's Suncoast Seafood, Incorporated*, 140 B.R. 588, a

11  bankruptcy decision from the Middle District of Florida in 1992.

12  As an initial observation it is difficult to quarrel

13  with any test that's based on the best interests of the

14  bankruptcy estate.  That test, however, in my view, begs the

15  question, because it does not address who gets to determine what

16  is in the best interests of the estate and, more specifically,

17  the degree to which, if any, the Court should defer to the

18  trustee's judgment regarding the decision to object to the proof

19  of claim and the timing of the filing of that objection.

20  Notwithstanding, the lack of a fully-developed

21  analytic structure in cases such as *Trusted Media* and *Sinclair's*

22  *Suncoast Seafood*, I can't envision a system in which the

23  Bankruptcy Court could review a trustee's decision regarding the

24  administration of potential claims objections on something less

25  deferential than an abuse of discretion standard as stated in

*The Court's Ruling on the Motion to Dismiss Claims Objections*      8

1  Morrison.

2       And I understand Ayzenberg's argument to be just that,

3  that a plenary standard of review, perhaps akin to that employed

4  by an Appellate Court reviewing a lower court's ruling on issues

5  of law is appropriate here.

6       This argument would be based on, in large part, on the

7  fact that on its face the Code does not delegate exclusive

8  claims objection authority to the trustee, as it does other

9  certain obligations and rights of the trustee in the bankruptcy

10 process.

11      As explained below, however, for purposes of resolving

12 the questions before me today I need not to define with

13 precision the standard with which I must review the trustee's

14 judgment in this case, at least not yet.

15      Suffice it to say that because I conclude that *Fred*

16 *Rueping* remains good law in deciding whether to admit — to

17 permit a creditor to file an objection to a claim over the

18 trustee's objection, a trustee's decision to defer or not file a

19 claims objection at all is entitled, at a minimum, to at least

20 some deference.

21      Whether the standard is abuse of discretion or some

22 intermediate standard, such as some deference, I need not decide

23 today.

24      Let me now apply these general principles to the

25 matter in hand.  I begin the discussion with a tautological

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    9

1    principle:   Only allowed claims should be paid in a bankruptcy

2    distribution.   But the trustee's decision whether to prosecute

3    objections and the timing of the filing of those objections

4    involves a business judgment.

5         The trustee must consider, among other things, the

6    merits of the claim, any potential objection to the claim, the

7    expense of prosecuting a claims objection, the certainty or

8    uncertainty that there will be an estate available for

9    distribution to creditors, the probable size of the estate, the

10   likely effect a successful distribution would have on the level

11   of distribution to creditors.

12        Sometimes, however, the potential claims objection and

13   the litigation designed to raise the bankruptcy estate are

14   sufficiently interrelated as to raise a real question whether it

15   is in the best interests of the bankruptcy estate to defer the

16   litigation of one or more claims objections until after

17   resolution of asset collection litigation.   As someone stated

18   during the hearing, it may be in some cases a proverbial

19   chicken-and-egg problem.

20        That brings us to what may be the heart of the dispute

21   in this case.   Ayzenberg asserts that it is far more sensible to

22   ascertain the size of the bankruptcy estate before or at least

23   at the same time as the parties delve equally into the trustee's

24   fraudulent-transfer action.

25        And, therefore, it is in the best interests of the

*The Court's Ruling on the Motion to Dismiss Claims Objections*          10

1  bankruptcy estate, according to Ayzenberg, that the claims

2  resolution process be accelerated not deferred.  And since the

3  trustee is unwilling at this time to take on that task of

4  accelerating the claims allowance process, she is volunteering

5  to do it.

6        Ayzenberg reasons that the Mogilyansky and Reinhart

7  claim are invalid, the effect being that the unsecured claims

8  against the estate are only $144,000, not in excess of 6.7

9  million.

10       If Ayzenberg is correct, the wisdom of pursuing the

11  large complicated fraudulent-transfer action undertaken by the

12  trustee is drawn into question.  Also, if she is correct, the

13  successful prosecution of the objections makes it more likely

14  that the fraudulent-transfer action could be settled, because

15  the estate's amounts for a substantial distribution will be

16  reduced and the legal expenses going forward can be minimized.

17       Ayzenberg's willingness to take on the claims

18  objection task is hardly altruistic.  She and other members are

19  the defendants in the trustee's fraudulent-transfer action.  She

20  is a creditor in the case only because she purchased a very

21  small claim in the bankruptcy case.

22       Since no explain — explanation — business-type

23  explanation has been given for the purchase of that claim, it is

24  fair to assume that she did so for the purpose of obtaining

25  standing — not in a — in the true sense of the word, "standing,"

*The Court's Ruling on the Motion to Dismiss Claims Objections*      11

1  but standing for these purposes to object to the Mogilyansky and

2  Reinhart claims.

3      I infer that her basic strategy is as follows:  If she

4  can eliminate the Mogilyansky and Reinhart claims completely,

5  she reduces the amount that the trustee needs to collect to pay

6  creditors.  She may therefore reduce her exposure in the

7  fraudulent-transfer action, as well, by reaching — by reducing

8  the reach-back period in the state law provisions upon which the

9  transfer — certain transfer avoidance claims of the trustee are

10  based.  As I said, this reduces her exposure and the exposure of

11  her codefendants who are members of her family.

12      Also, as suggested earlier, even if the two creditor

13  claims are not disallowed in their entirety, a significant

14  reduction in the claims could cause the trustee to modify her

15  business judgment and lower her settlement demands in the

16  fraudulent-transfer action.

17      But pointing out Ayzenberg's self-interest in all of

18  this does not disqualify her from prosecuting an objection.  The

19  entire bankruptcy system is based on the premise that parties

20  will act in their own self-interests.  This reality even applies

21  to some extent to the trustee who, although the trustee is a

22  fiduciary, is paid by commission and who is sometimes referred

23  in the literature metaphorically as a shark that eats what it

24  kills.

25      On the issue here, Ayzenberg's motivation, depicted as

*The Court's Ruling on the Motion to Dismiss Claims Objections*          12

1  a negative quality by the trustee, actually is a double-edged

2  sword.  Ayzenberg has a strong incentive to vigorously prosecute

3  the claims objections.  That at least satisfies a threshold

4  requirement in considering the propriety of authorizing her to

5  prosecute the claims objection at issue.

6          That is, separate and apart from her interest in

7  augmenting her distribution on her paltry $4,000 claim, the

8  potential impact of the fraudulent-transfer action — the

9  potential impact of the claims objection on the

10  fraudulent-transfer action gives her a large incentive to attack

11  the Mogilyansky and Reinhart claims.

12          Ayzenberg might even go so far as to suggest that her

13  status as claims objector is superior to that of the trustee.

14  In light of the fact that a successful claims objection might

15  impact the potential reach-back period in the fraudulent-

16  transfer action, Ayzenberg suggests the trustee lacks the full

17  incentive to prosecute the claims objection.

18          The trustee, on the other hand, prefers what might be

19  characterized as the conventional Chapter 7 case administration

20  approach.  First, raise an estate, then address claims allowance

21  and distribution.

22          The trustee reasons that if the fraudulent-transfer

23  action is not successful and there are no estate funds to

24  distribute there is no point in expending the parties' or the

25  Court's resources litigating the validity of the Mogilyansky and

*The Court's Ruling on the Motion to Dismiss Claims Objections*      13

1  Reinhart claims.

2           To recapitulate, Ayzenberg perceives the trustee and

3  her professionals as turning a molehill into a mountain by

4  pursuing what she asserts are invalid claims against her family

5  and herself without first testing the validity of the two claims

6  that comprise approximately 98 percent of the filed claims in

7  this case.

8           In less charitable moments, Ayzenberg even suggests

9  that the trustee's real motivation is to maximize your

10 commission and the professional compensation of her attorneys.

11          The trustee, on the other hand, perceives the debtor

12 as having participated in a massive series of fraudulent

13 transfers and sees Ayzenberg as an active participant in those

14 fraudulent schemes and therefore looks askance at Ayzenberg's

15 attempt to insinuate herself into case administration for the

16 ultimate purpose of undermining the trustee's fraudulent-

17 transfer action.

18          I do see these two diametrically-opposed positions

19 regarding the appropriate manner in which this bankruptcy case

20 should be managed as internally consistent and logical as they

21 are different.

22          To resolve the issue as to the appropriate manner in

23 which this case should be administered requires returning to the

24 legal framework discussed earlier under *Fred Rueping*.

25          The issue is this:  Has Ayzenberg made a sufficient

*The Court's Ruling on the Motion to Dismiss Claims Objections*          14

1    showing for the Court to override the trustee's decision to

2    defer the initiation of claims objection litigation against

3    Mogilyansky and Reinhart.

4            For two reasons, I conclude that Ayzenberg has not

5    made that showing:

6            First, I am satisfied that given the trustee's

7    presumptively exclusive responsibility to review proofs of claim

8    and, when appropriate, file objections, the trustee should be

9    given an opportunity to complete her investigation regarding the

10   merits of the two claims before the Court intercedes to

11   authorize creditor-filed objections.

12           The trustee testified during the hearing on the

13   debtor's motion to voluntarily dismiss the case and made an

14   offer of proof on the current motion that was accepted as part

15   of the record during the hearing.

16           And I took her testimony to be that she had reviewed

17   the Mogilyansky and Reinhart claims in a preliminary fashion and

18   concluded that they appeared mostly valid.  And that while she

19   seemed inclined to defer the initiation of claims objections

20   until after she has achieved some success in the fraudulent-

21   transfer action, she remained amenable to further evaluating the

22   merits of the claim and possibly initiating claims objections

23   sooner rather than later based on additional information that

24   might be brought to her attention.

25           In that regard, the trustee made a record that she

1   offered to meet with Ayzenberg professionals as part of her

2   investigation of the substance and merits of the potential

3   objections that Ayzenberg wishes to press and that Ayzenberg

4   representatives had failed to avail themselves of the

5   opportunity to meet with the trustee and convince her to

6   promptly prosecute the claims objections.

7          In these circumstances, I accept the trustee's

8   implicit argument that her authority as the representative of

9   the bankruptcy estate to decide if and when to file claims

10  objections should not be displaced in favor of a creditor who

11  did not cooperate in her investigation of the very claims that

12  the creditor seeks authority to challenge.

13         A second consideration that contributes to my decision

14  is the fact that the competing proceedings, that is the

15  fraudulent-transfer action and the claims objection, on their

16  face both appear to be relatively complex and time-consuming.

17         Available in the court record for my review are the

18  proofs of claim and the objections.  My review of this material

19  suggests that those proceedings involve multiple factual and

20  legal issues, are not simple, and potentially will generate

21  considerable litigation.

22         This dynamic cuts against permitting Ayzenberg's

23  claims objection to proceed against the trustee's wishes at this

24  time.  There is reason for the trustee to be reluctant to

25  undertake time-consuming claims allowance litigation when there

1  is no certainty that there will be an estate for distribution.

2       I recognize, of course, that the same can be said

3  about the fraudulent-transfer action, if that litigation were

4  given primacy.  Why undertake a complex fraudulent-transfer

5  action if it will result in the creation of an estate far in

6  excess of the amount of the ultimately-allowed — allowable

7  claims.

8       The real difficulty here is that in this case the best

9  interests of the estate ends up on the respective merits of the

10  claims objections, as well as the fraudulent-transfer action.

11  And the merits are not knowable at this time to this Court.

12       As a result, whatever the standard may be by which I

13  review the trustee's judgment on the issue, I have an

14  insufficient record to draw the conclusion that the trustee's

15  decision to defer the initiation of claims objection is

16  sufficiently flawed as to warrant the authorization of claims

17  objection litigation by a creditor over her objection.

18       Accordingly, I will grant Mogilyansky's motion without

19  prejudice to Ayzenberg's right to refile in the future her

20  objections to the Mogilyansky and Reinhart proofs of claim.

21       I point out that in making this decision I have

22  consciously attempted to fashion as narrow a ruling as possible.

23  I recognize that I have not given the parties guidance on a

24  number of questions, such as how much time should the trustee

25  continue to have to investigate the propriety of filing

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    17

1  objections.

2           If the trustee completes her investigation and

3  concludes that objections to the two claims are warranted, but

4  nonetheless chooses to defer filing them in favor of prosecuting

5  the fraudulent-transfer action may Ayzenberg then press her

6  claims objections?

7           If the parties agree that the — that objections to the

8  claims are warranted and the trustee wishes to defer those

9  objections, what type of evidentiary record must Ayzenberg make

10 to convince the Court to override the trustee 's judgment

11 regarding the timing of the filing of the objection?  What is

12 the standard of review the Court will employ in reviewing that

13 judgment?

14          I have not answered those questions today, because

15 they are abstract questions forming at this time and would

16 result in the issuance of an advisory opinion.  Perhaps down the

17 road it will be presented and it will be necessary to decide

18 then.  And, if so, I will do so at that time.

19          Finally, before concluding this bench decision I

20 address the debtor's right to press objections to the

21 Mogilyansky and Reinhart claims.  Most but not all of the legal

22 principles discussed earlier applies to the debtor.  Although a

23 debtor is a party-in-interest for most purposes, courts have

24 held that generally a Chapter 7 debtor is not a

25 party-in-interest and has no stake in the outcome of claims

*The Court's Ruling on the Motion to Dismiss Claims Objections*        18

1   litigation and ultimately the distribution of estate assets, if

2   the estate assets do not exceed the allowed claims.

3        In other words, if the outcome of the claims objection

4   will not create or increase a surplus in the estate and result

5   in or increase distribution of estate property back to the

6   debtor, then the debtor lacks authority to object to a proof of

7   claim.

8        There are many cases that stand for this proposition.

9   I will cite one, *Willemain versus Kivitz*, 764 F.2d 1019, a

10  Fourth Circuit case from 1985.

11       Here I accepted that as argument that there is a

12  sufficient potential for a solvent bankruptcy estate to be

13  created as to warrant a recognition of the debtor's right to

14  object to the Mogilyansky and Reinhart claims.  That result is

15  the logical extension of the trustee position.

16       If the fraudulent-transfer action is put first and the

17  trustee succeeds in that action the estate may exceed the amount

18  of the allowed claims, particularly if Mogilyansky — if the

19  Mogilyansky and Reinhart claims are disallowed in any

20  substantial amount.

21       I'll put aside for a moment the issue of whether in

22  the context of a fraudulent-transfer action it's appropriate and

23  if the theory of the fraudulent transfer is that it was an

24  intentional fraudulent transfer whether returning excess funds

25  to the debtor is appropriate.  For purposes of the decision

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    19

1   today, I will assume that it may be appropriate.

2          As a result, there may be a difference between the

3   debtor's status and Ayzenberg's status when it comes to the

4   filing of objections to proofs of claim.

5          Ayzenberg's right to file a claims objection against

6   the trustees wishes requires that she convince the Court that

7   the trustee's judgment be overridden, because the trustee, in

8   effect, is a representative of Ayzenberg's interest in the

9   bankruptcy case.

10         The debtor's interest is a distinct interest.  It's a

11  personal interest.  And the debtor's right to object does not

12  require that she override the trustee's judgment in that regard,

13  provided that there is a reasonable — there was a reasonable

14  prospect of a surplus in the estate.

15         Consequently, this isolates what I had previously

16  called the timing issue.  Should the debtor be permitted to

17  press the objections now?  I think not.  The logic of the

18  debtor's position is that a surplus need be created precisely

19  because the fraudulent-transfer action may be litigated to a

20  successful result before claims allowance litigation reduces the

21  claims against the estate below the amount of money retrieved by

22  the trustee.

23         The argument that there is a reasonable likelihood

24  that a surplus estate will be created is what gives the debtor

25  the authority to object to the claims in the first place.

*The Court's Ruling on the Motion to Dismiss Claims Objections*               20

1          So I will not permit the debtor to have it both ways.

2    That is, to have authority to object because there may be a

3    surplus estate created and then attempt to litigate the proofs

4    of the claim first which would eliminate the likelihood that a

5    surplus would be created.

6          Such an outcome would permit the debtor to employ his

7    status to object to proofs of claim to undermine the potential

8    that a surplus will be created.  The position the debtor takes

9    makes it obvious and understandable, given that the spouse of

10   Ms. Ayzenberg and the other defendants in the

11   fraudulent-transfer action are members of his family, that the

12   debtor's purpose in pressing the claims objection is not to

13   assist in creating a surplus estate but rather to obstruct the

14   fraudulent-transfer action, a lawsuit in which he is alleged to

15   have committed intentional fraudulent transfers.

16         Therefore, notwithstanding my conclusion that the

17   debtor has authority to object to the Mogilyansky and Reinhart

18   claims, I conclude that the trustee's judgment deferring a

19   prosecution of any claims objection should prevail for the time

20   being, at least, over the debtor's right to press objections,

21   unless the debtor can make the same type of showing as Ayzenberg

22   for overriding the trustee's judgment.

23         For the reasons expressed earlier, neither Ayzenberg

24   nor the debtor has made a sufficient showing on the issue at

25   this time.

*The Court's Ruling on the Motion to Dismiss Claims Objections*        21

1        Therefore, insofar as the debtor has objected to the

2   Mogilyansky and Reinhart claims through his joinder of Ayzenberg

3   objections I will dismiss those objections without prejudice.

4        That concludes my ruling.  Is there any outstanding

5   issues in this matter that parties believe I have left out that

6   I need to address?

7        MR. BOVARNICK:  No, sir.

8        MR. BRESSLER:  No, Your Honor.

9        THE COURT:  Right.  I hear no, no answer to that.

10       I will issue an appropriate order to carry out the —

11   carry out this decision.

12       Anything else we should discuss while we are all here?

13       MR. BRESSLER:  Your Honor, there is —

14       THE COURT:  You need to sit down and use the

15   microphone so they could hear you.

16       MR. BRESSLER:  I'm sorry.  I apologize.  I'm used to

17   standing up to address the Court.

18       THE COURT:  Everybody is.

19       MR. BRESSLER:  There is a separate motion listed today

20   for the full testament or alternative service as to three

21   defendants in the adversary action.

22       THE COURT:  All right.  While I'm looking through the

23   papers, do you want to just describe how service was effected?

24       MR. BRESSLER:  Service was effected by First Class

25   mail at the address we were supposed to be able to ascertain the

*The Court's Ruling on the Motion to Dismiss Claims Objections* 22

1   three defendants, two from the Pennsylvania Corporations Bureau.

2   One, we could not find anything from the Pennsylvania

3   Corporations Bureau, but there is testimony of Mr. — of the

4   debtor that he has been the officer and involved with the one

5   company.  And, therefore, we attempted to make service at his

6   last known address.

7        We also showed him the motion and other efforts we've

8   made to locate these defendants, including attempting personal

9   service on at least one of them and their relationship to other

10  parties who are in the case so that — it could hardly be said

11  that the defendants wouldn't be aware of what's going on.

12       Marina Reinsurance, there's been testimony of Mr. — of

13  the debtor's involvement with Marina Reinsurance.

14       The Fox Lake Company, there's been some testimony of

15  the debtor's former involvement at least.  And he is the last

16  person we know that was involved with that company.

17       The third company, there's been testimony of — there's

18  been an indication that Lena Polnet, I believe, has been

19  involved with that company.

20       So that there are defendants in this case involved

21  with these three entities that have filed responses.  Generally

22  what happened is we got back many, many envelopes marked,

23  "Refused," returned, no address.

24       Even now as to a number of defendants that filed

25  answers, so that the — the envelopes were not being accepted.

*The Court's Ruling on the Motion to Dismiss Claims Objections*                          23

1    We have, because this is a complicated case and we've never seen

2    that has happened, we have offered an alternative, Your Honor,

3    if Your Honor feels it's appropriate, that we give publication

4    notice to ensure that these defendants are noticed before we

5    take the fall, even though we believe that these defendants are

6    already on notice based on the fact that parties related to them

7    are on notice.

8            THE COURT:  Um-hum.

9            MR. BRESSLER:  And we also showed that we did send

10   letters to both Mr. Giacometti and Mr. Goldin, asking them if

11   their clients could provide any information.

12           Mr. Giacometti responded that his client would not be

13   providing any information.

14           Mr. Goldin has never responded as to these three

15   entities.

16           THE COURT:  I noticed in your form of order you won a

17   judgment for an accounting.  Is that of any real practical

18   consequence if the defendants are not participating in the case?

19           MR. BRESSLER:  Well, if we can at some point locate

20   the defendants or if they don't provide the account —

21   accounting, there could be an issue of then ordering an officer

22   or somebody else involved with the companies who are defendants

23   to cause that accounting to occur.  So I think it may have some

24   weight, although I recognize at this point I don't know how

25   significant it will be.

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    24

1       THE COURT:  Okay.  Does anyone else wish to be heard

2  on this?

3       MR. GIACOMETTI:  Your Honor, Harry Giacometti.  I

4  couldn't hear Gary clearly on all his points.  But I guess, with

5  respect to the debtor and the fact that the debtor may have an

6  interest in these companies that they're seeking a default

7  against, I would — to your point that — as the preclusive effect

8  of the entry of the default and the judgment that would require

9  an accounting, I would just — I guess our position would be that

10 a default just precludes these defendants from asserting a

11 defense in this case.

12      THE COURT:  Well, the order goes further.  The order

13 directs them to provide an accounting.  Now whether the trustee

14 seeks to enforce that is up to the trustee.

15      But I suppose what I hear Mr. Bressler saying is that

16 if he finds a responsible party connected to one of those

17 entities, he's reserving the right to seek to compel the

18 responsible party to comply with the order.  It may have some

19 consequence down the road.

20      That's how I understand — what I understand him to be

21 saying.  So does that lead you to take issue with anything in

22 the motion?

23      MR. GIACOMETTI:  I think I would, to the extent that —

24 that — well, Your Honor, I think I would.  And what I'd like to

25 do is discuss it with my client to see whether, as a result of

*The Court's Ruling on the Motion to Dismiss Claims Objections*                    25

1    that, that there would be some interest in my client —

2              THE COURT:  Well, why do you need more time?  The

3    motion has been pending — was served a while ago.  Why would you

4    first need to discuss that?  And why would — and what — give me

5    some type of a *prima facie* argument as to why, assuming service

6    was valid, I shouldn't order that relief?

7              MR. GIACOMETTI:  Your Honor, I just don't know whether

8    service was valid.  I don't know what my client's position on

9    the issue would be.

10             MR. GOLDIN:  Your Honor, may I be heard?  This is Ely

11   Golden.

12             THE COURT:  Yes.

13             MR. GOLDIN:  I do bring to the Court's attention that

14   we, in a motion to dismiss, which challenges — they complain of

15   a number of issues, we argue that the trustee has no, quote,

16   right of accounting, that the trustee can certainly take

17   discovery and obtain evidence and do other things that are

18   proper under the Rules.

19             But the concept of an accounting in its classic form,

20   as I understand it under state law, is not something the trustee

21   is powered with.  So as to the issue the accounting, I would

22   simply ask that the Court or suggest, respectfully, that the

23   Court perhaps defer ruling on the accounting question until the

24   motion to dismiss has been adjudicated.

25             If the trustee wants a default judgment for failure to

1    answer the complaint and service has been properly made if the

2    Court — in the Court's determination, I think the Court can

3    enter whatever judgment it thinks is appropriate.

4           But in terms of that relief, which is not the

5    traditional or orthodox relief that you would see in a Rule 55

6    motion, I would have the Court wait until the dispositive motion

7    has been ruled upon.

8           THE COURT:  Mr. Bressler?

9           MR. BRESSLER:  Your Honor, Mr. Goldin represents one

10   party, for example, for example, Ms. Polnet, who we alleged is

11   involved with the one company.  In fact, in a motion to dismiss

12   they talk about this company and the claims against them,

13   although no response was filed on behalf of them.

14          If — if these principals of these companies, to the

15   extent they're principals, had a problem with the accounting,

16   there was nothing to prevent these companies from filing an

17   answer.  They made a tactical decision not to respond —

18          THE COURT:  Well, let me take his comment, put it in a

19   slightly different light.  Let's think of him more as a friend

20   of the Court, in that what I hear him saying is that there are

21   situations which a court will not grant a default judgment if

22   the relief is not authorized by law.

23          And he's pointing out that I have a motion pending in

24   front of me where that very argument is being made.  You may be

25   right in a technical sense.  You might not have —

1  misunderstanding to ask me not to do something as to a party he

2  doesn't represent, but he's just pointing something out to me.

3       And since it is a matter of discretion, I turn back to

4  you, your comments on the merits, is that something — that's

5  sensible to do if I had that issue before me.  And if I were to

6  conclude that there is no right to an accounting, would it be

7  appropriate for me to grant the accounting even against a

8  nonresponding defendant?

9       And I'll firm one other factor.  If your comments

10 earlier, if I understood your comments earlier correctly, the

11 trustee has no present intention of acting in the immediate

12 future on the accounting relief, anyway.  So what harm is there

13 to the trustee to defer that issue?

14       MR. BRESSLER:  Well, I — I'm trying to balance the

15 fairness of the situation.  And to me if they want to come in

16 and object to the accounting, then they should have come in on

17 behalf of that entity.  We don't know if a year from now —

18       THE COURT:  They — they did object to the accounting

19 on behalf of the entities they represented.

20       MR. BRESSLER:  Correct.  And not only just these

21 entities.  And we don't know whether a year from now they're

22 going to come in and somehow argue that the default judgment was

23 invalid and they never — because they never entered an

24 appearance on behalf of —

25       THE COURT:  Not — they'd have to come in on behalf of

1   the party against whom the default was entered, right?

2          MR. BRESSLER:  Right.

3          THE COURT:  He's not making that argument.

4          Here's what I'm going to do —

5          MR. BRESSLER:  But I understand their argument, and I

6   understand why the Court would be reluctant.  While we don't

7   concede the right on the accounting point, the Court may feel it

8   would be inconsistent if the Court ruled on the motion to

9   dismiss for the accounting, for everybody else denying it, and

10  entered an accounting as to these three entities.

11         THE COURT:  And did you —

12         MR. BRESSLER:  And I — I do understand the issue.

13         THE COURT:  And I will freely confess, I haven't

14  studied the issue yet in enough detail to know the answer or

15  what my answer will be, at least.

16         MR. BRESSLER:  We haven't had the response yet to win

17  that, so — I understand that, as well.

18         THE COURT:  I mean just look at the motion to dismiss,

19  and I do recall that issue being in there.

20         Well, here's what I'm going to do.  I will make

21  another confession.  I did not give this motion a lot of

22  attention before today, concentrating primarily on the other

23  motion.  I will review it again in chambers.  I'm satisfied that

24  there's service.

25         At a minimum I will grant to the default judgment on

*The Court's Ruling on the Motion to Dismiss Claims Objections*      29

1   liability.  My inclination right now is to defer the accounting

2   relief.  If I have some further problem with service, I'll

3   either go to the alternative plan, alternate relief that you

4   seek or, if need be, I'll bring you back for another hearing.

5   So those are the options.  But I do want to just take a closer

6   look at this in chambers.

7          MR. BRESSLER:  Thank you, Your Honor.

8          THE COURT:  All right.  And I think that's the last

9   matter we need to address today.  So thank you all.

10         MR. GOLDIN:  Thank you, Your Honor.

11      (The hearing was adjourned at 10:52 o'clock a.m.)

12                            —o0o—

13

14

15

16

17

18

19

20

21

22

23

24

25

State of California          )
                             )      ss.
County of San Joaquin        )


     I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Eastern District of Pennsylvania, Clerk of the Court, of the proceedings taken on the date and time previously stated in the above matter.

     I further certify that I am not a party to nor in any way interested in the outcome of this matter.

     I am a Certified Electronic Reporter and Transcriber by the American Association of Electronic Reporters and Transcribers, Certificate No. CERT 00124.  Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer
Palmer Reporting Services

Dated May 16, 2010